**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DARRICK LEE SIDES,

                    Plaintiff,

      v.                                        No. 9:15-CV-1203
                                                  (MAD/CFH)

DOCTOR PAOLANO; et al.,

                    Defendants.

_____

**APPEARANCES:**                            **OF COUNSEL:**

DARRICK LEE SIDES
96-A-5286
Plaintiff, Pro se
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902

HON. ERIC T. SCHNEIDERMAN         CHRISTOPHER J. HUMMEL, ESQ.[1]
Attorney General for the                    Assistant Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[2]

    Plaintiff pro se Darrick Lee Sides ("Sides"), an inmate who was, at all relevant times, in

the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983.  Sides alleges that defendants

_____

     1       The undersigned bears no relation to the assistant attorney general assigned in this action.

     2       This matter was referred to the undersigned for report and recommendation pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

P. Snyder ("Snyder"), P. Schmidt ("Schmidt"), Dr. Paolano ("Dr. Paolano"), and Dr. Jon

Miller ("Dr. Miller") were deliberately indifferent to his serious medical needs in violation of

the Eighth Amendment.  Dkt. No. 1 ("Compl.").  Additional defendants were named, but the

claims against them have since been dismissed.  Dkt. No. 6 at 17.[3]  Presently before the

Court is defendants' motion for summary judgment.[4]  Dkt. No. 40.  Sides opposed the

motion, and defendants submitted a reply.  Dkt. Nos. 43, 44.  For the following reasons, it is

recommended that defendants' motion for summary judgment be granted.


## I. Background

### A. Facts[5]

---

[3]      Throughout this Report-Recommendation, references to page numbers in items that appear on the docket are to the header numbers generated by CM/ECF, not to the pagination the parties assigned in their individual documents.

[4]      Defense counsel informs the Court that service has not been effected on defendant Snyder. See Dkt. No. 40-8 at 3, n.1.

> Where a defendant has not been served with process within 120 days of the filing of the complaint, the complaint must be dismissed without prejudice as to that defendant or the court must order "service be made within a specified time." FED. R. CIV. P. 4(m).  If, however, the plaintiff demonstrates good cause for service failures, the Court must also extend the time to serve.  Id.  Additionally, the Second Circuit has held that "district courts have discretion to grant extensions even in the absence of good cause." Zapata v. City of New York, 502 F.3d 192, 196 (2d Cir. 2007).

More than 120 days have passed since Sides filed the Complaint on October 7, 2015.  Sides has not provided any reasons constituting good cause for failing to serve this named defendant.  Accordingly, any and all claims alleged against said Snyder should be dismissed from this action.  Generally, such dismissals should be without prejudice.  However, as discussed below, the undersigned recommends that the claims be dismissed with prejudice as untimely, and this recommendation encompasses any claims that may be argued against Snyder.

[5]      Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there

The facts are reviewed in the light most favorable to Sides as the non-moving party.
See subsection II(A), infra.  On August 5, 2008, Sides arrived at Coxsackie Correctional
Facility ("Coxsackie C.F.").  Dkt. No. 41 at 10.  On January 15, 2009, Dr. Miller, "Clinical
Physician II and Facility Health Services Director at Coxscakie," treated Sides for rectal
bleeding.  Dkt. No. 40-6 at ¶¶ 1, 7. Dr. Miller ordered blood work, which was completed on
January 27, 2009, and referred Sides for a colonoscopy.  Id.; Dkt. No. 41 at 107.  On
March 10, 2009, Sides underwent the colonoscopy at an outside hospital.  Dkt. No. 40-6 at
¶ 8.  On May 8, 2009, Dr. Miller reviewed the results of the procedure and advised Sides
that he suffered from medium-sized, non-bleeding hemorrhoids.  Id. at ¶ 8, 9.  Dr. Miller
prescribed Metamucil to treat Sides' symptoms and concluded that a hermorrhoidectomy
was not medically necessary.  Id. at 9, 10.

On September 14, 2011, Sides attended sick call for complaints of bleeding
hemorrhoids and "frequently formed stool."  Dkt. No. 40-7 at ¶ 10.  Phyllis Schmidt,

---

exists no genuine issue.  Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. *Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.*

N.D.N.Y. L.R. 7. 1(a)(3) (emphasis in original).

Defendants filed a Statement of Material Facts.  Dkt. No. 40-1.  Sides responded and admits the facts contained in certain paragraphs of defendants' Statement of Material Facts.  Dkt. No. 43-2. To the extent that the "facts" defendants asserted in the Statement of Material Facts are supported by the record, the Court will consider them in the context of the within motion.  The facts recited are for the relevant time period as referenced in the Complaint.

"Registered Nurse II," scheduled Sides for an appointment with a doctor.  Dkt. No. 40-7 at 1; Dkt. No. 43-2 at 14; Dkt. No. 41 at 104.

On September 27, 2011, Dr. Albert Paolano, then employed as "a Clinical Physician II" at Coxsackie C.F., provided treatment for Sides' headaches and symptoms related to hemorrhoids.  Dkt. No. 40-5 at ¶¶ 2, 7.  Dr. Paolano prescribed Ibuprofen, Metamucil, and a suppository to treat Sides' symptoms.  Id.  On October 27, 2011, Sides attended sick call for complaints related to hemorrhoid pain.  Dkt. No. 41 at 100.  Nurse Schmidt provided Metamucil and hemorrhoid cream.  Id.  On July 31, 2012, Sides returned to Dr. Paolano with complaints related to hemorrhoid pain and rectal bleeding.  Dkt. No. 40-5 at ¶ 8.  Dr. Paolano determined that Sides' symptoms were not responding to the prescribed treatment and referred him for a surgical consultation and  ordered blood work.  Id.  On August 7, 2012, the blood work was completed.  Id. at ¶ 16.

On August 8, 2012, Dr. Miller reviewed the results of the blood work and noted that "follow up will be arranged with a primary provider," which indicates to the nursing staff that an additional appointment should be scheduled to further evaluate the patient.  Dkt. No. 40-6 at ¶ 14.  Dr. Miller also indicated, "notification form completed and distributed."[6]  Id. at ¶ 14.  On August 22, 2012, Sides had a consultation with nonparty Dr. Conete, a doctor employed by Albany Medical Center.[7]  Id. at ¶ 17.  Dr. Conete recommended a colonoscopy and excisional hemorrhoidectomy.  Id.  On August 28, 2012, Dr. Miller received and reviewed Dr. Conete's report.  Id. at ¶ 18.

---

[6]    Although "notification" indicates to the nursing staff that the patient should receive a copy of the blood work results, see Dkt. No. 40-6 at ¶ 33, Sides claims that he did not receive notification.  Dkt. No. 43-2 at 9.

[7]    Sides claims that the consultation took place at Coxsackie C.F.  See Dkt. No. 43-2 at 10.

4

On September 25, 2012, Sides met with Dr. Paolano.  Dkt. No. 40-5 at ¶ 16; Dkt. No. 71 at 23.  Based on the results of the blood work, Dr. Paolano ordered additional blood work, to be completed on the next available day.  Id.  On September 27, 2012, Sides had his blood drawn.  Dkt. No. 40-5 at ¶ 16.  On September 28, 2012, Dr. Miller reviewed the results of the blood work and referred Sides to Albany Medical Center for further medical attention.  Dkt. No. 40-6 at ¶ 24.  Later the same day, Sides was admitted to Albany Medical Center.  Dkt. No. 41 at 128.  Sides received a blood transfusion and underwent a colonoscopy to evaluate his hemorrhoids.  Dkt. No. 40-6 at ¶ 25.  The colonoscopy revealed stage III hemorrhoids and, as a result, the staff at Albany Medical Center deemed a hemorrhoidectomy medically necessary.  Id.  On October 4, 2012, Sides underwent a hemorrhoidectomy.  Id.  On October 6, 2012, Sides returned to Coxsackie C.F.  Id.

Following his discharge from Albany Medical Center, Sides was housed in the infirmary and received care to ensure that he recovered from his procedure.  Dkt. No. 40-5 at ¶ 20.  On October 9, 2012, Sides denied experiencing any rectal bleeding and was discharged from the infirmary.  Id.  In October 2012, Sides submitted a request for copies of his medical records.  Dkt. No. 41 at 15.  On November 6, 2012, Dr. Paolano evaluated Sides and ordered blood work.  Dkt. No. 40-5 at ¶ 21.  On November 15, 2012, Dr. Paolano met with Sides to discuss the results of the blood work.  Id. at ¶ 22.  On January 10, 2013 and January 24, 2013, Dr. Paolano provided additional post-surgical treatment.  Id. at ¶ 23.

In July 2013, Sides filed a grievance claiming that, despite his request in October 2012, he had not received his medical records related to his treatment at Albany Medical Center.  Dkt. No. 40-3 at 8.  On July 25, 2013, the Inmate Grievance Resolution Committee accepted the grievance and advised Sides that his records were recently received by the

5

medical department and would be issued upon clearance.  Id. at 9.

## B.  Procedural History

On October 7, 2105, the Court received the Complaint in the within action.  Dkt. No. 1 ("Compl.").  Upon review of the Complaint, the Court directed defendants to respond to the Eighth Amendment claims.  Dkt. No. 6.  On May 5, 2016, Dr. Miller, Dr. Paolano, and Nurse Schmidt filed an Answer to the Complaint.  Dkt. No. 21.  On August 30, 2016, Sides appeared at a deposition.  Dkt. No.  41.  On March 1, 2017, defendants filed the within motion pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 seeking judgment as a matter of law with respect to Sides' Eighth Amendment claims.  Dkt. No. 37.  Sides' opposed the motion, and defendants responded.  Dkt. Nos. 43, 44.

## II.  Discussion[8]

Sides contends that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment because defendants were aware, for two months, that he was "near death" and did not provide the required treatment.  See Comp., generally.  Defendants move for summary judgment arguing that (1) Sides' claims are barred by the statute of limitations, (2)  Sides failed to exhaust his administrative remedies, (3) defendants are entitled to summary judgment on Sides' Eighth Amendment claims, and (4) defendants are entitled to qualified immunity.  See Dkt. No. 40, generally.

---

[8]    All unpublished decisions cited herein, unless otherwise indicated, have been provided to Sides.

**A. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).  The party opposing the motion must set forth facts showing a genuine issue for trial.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party.  Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not

7

> "suggest," . . . that we should not "excuse frivolous or vexatious filings by
> pro se litigants," . . . and that pro se status "does not exempt a party from
> compliance with relevant rules of procedural and substantive law.

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d

185, 191-92 (2d Cir. 2008).

## B.  Statute of Limitations

Defendants argue that Sides' Eighth Amendment claims should be dismissed as time

barred under the three-year statute of limitations.   Dkt. No. 40-8 at 7-9.  Sides contends

that his deliberate indifference claims in this action

> are not predicated upon the date of emergency care of
> September 28, 2012 or hemorrhoidectomy on October 4, 2012.
> It's premised upon the laboratory report by BioRefeference Lab
> Inc. of August 8, 2012.  The reports [sic] 'Clinical Findings'
> showed Plaintiff's serious medical condition of increased rectal
> bleeding was in 'life-threatening' range.'  A report Plaintiff
> requested in October of 2012, but didn't receive until many
> months later which showed (in conjunction with other medical
> reports) the extent of Defendants [sic] knowledge of Plaintiff's
> condition in him needing an emergency blood-transfusion.

Dkt. No. 43-1 at 4.

## 1.  Accrual Date

The statute of limitations period for section 1983 claims brought in federal court in New

York State is three years.  See Cloverleaf Realty of N.Y., Inc. v. Town of Wawayanda, 572

F.3d 93, 94 (2d Cir. 2009).  Generally, a section 1983 claim accrues "when the plaintiff

knows or has reason to know of the harm." Shomo v. City of N.Y., 579 F.3d 176, 181 (2d

Cir. 2009).  "The crucial time for accrual purposes is when the plaintiff becomes aware that

8

he [or she] is suffering from a wrong for which damages may be recovered in a civil action." Singleton v. City of N.Y., 632 F.2d 185, 192 (2d Cir. 1980). "The claim accrues and the limitation period begins to run when the plaintiff has notice of the act that is claimed to have caused injury." Johnson v. Nyack Hosp., 891 F.Supp. 155, 162 (S.D.N.Y. 1995) (citing, inter alia, Tadros v. Coleman, 898 F.2d 10, 12 (2d Cir. 1990) cert. denied 498 U.S. 869 (1990)). The cause of action accrues even though the full extent of the injury is not then known or predictable." Wallace v. Kato, 549 U.S. 384, 391 (2007). "The fact that plaintiff may have been unaware that he had legal claims [ . . . ] is of no consequence." Keitt v. City of N.Y., No. 09 CIV. 5663, 2010 WL 3466175, at *6 (S.D.N.Y. Aug. 9, 2010).

With respect to deliberate indifference claims, the action accrues when the plaintiff "knows or has reason to know of the injury." Whitfield v. O'Connell, No. 09 Civ. 1925, 2010 WL 1010060, at *5 (S.D.N.Y. Mar. 18, 2010), aff'd, 402 F. App'x 563 (2d Cir. 2010) (summary order). "Delay in discovering the cause of the injury does not prevent the claim from accruing because it is discovery of the injury, not discovery of the other elements of the claim, [that] starts the clock." Rotella v. Wood, 528 U.S. 549, 555 (2000).

Here, Sides testified that when he was released from the hospital in October 2012, he requested his medical file related to his treatment at Albany Medical Center because "they never notified my mother that I went to the hospital for eight days like the rule stipulate [sic]." Dkt. No. 41 at 14-15. Sides explained that he did not know that defendants delayed his medical care until he received and reviewed the medical records in July 2013. Id. at 15; Dkt. No. 43-1 at 12-13.

The evidence before the Court does not support Sides' contentions that his claim should not accrue until July 2013, when he received his medical records, and "discovered"

the injury.  Review of the record demonstrates that Sides was aware that he had a "medical problem" well before July 2013.  "[S]omewhere in August 2012," Sides filed a grievance concerning his medical condition and care at Coxsackie C.F.  Dkt. No. 41-3 at 13.  Sides filed the grievance because he was bleeding and was continually told he was anemic.  Id. at 13, 14.  Shortly after filing the grievance, a "grievance supervisor" pulled Sides "out of line" and told him that he received the grievance and "talked to medical."  Id. at 13.  Sides testified that the supervisor "felt" that it was "an emergency medical complaint" and resolved the issue in "his own formal manner."  Dkt. No. 43-1 at 15.  The supervisor told Sides that he was scheduled to see a specialist and that he "put the grievance to the side."  Dkt. No. 41 at 13.  Within a week or two, Sides met with a specialist.  Id.  Sides did not take any further action with respect to the grievance and testified as follows:

> Q.      . . . did you appeal that grievance to the superintendent?
>
> A.      No, sir, because he said he called -- I guess he handled it formally.  By me submitting the complaint he said it was serious.  So I guess he called the doctor, sick call, whatever, whoever he spoke to.  They said they told him that I was going to see a specialist about my condition.  So he said -- he put it to the side.  And he said if I don't see the specialist to send him a note[.]

Dkt. No. 41 at 13-14.  Sides did not send the grievance supervisor a note because he saw the specialist.  Id. at 14.

The evidence also establishes that by the end of September 2012, Sides knew that his medical treatment was delayed.  Dkt. No. 41 at 14.  Sides testified as follows:

> Q.      So by the end of September 2012, you knew that the medical staff had delayed in getting you treatment?
>
> A.      Yes, they kept saying that I was going to see the specialist, that I was anemic, and they kept saying.  Take the

> Ibuprofen.  Like, some of it shows that they tell me to stay out of work, give me a doctor's notes, stay out of work. That's what they would do.  Even when I put sick call requests in after that, I went to primary care after that and tell them about it.

Id. at 14-15.

During the deposition, Sides provided testimony regarding his complaints, symptoms, and treatment, but claimed that he was not aware of the full extent of his medical condition until he received copies of his blood tests.  Specifically, Sides stated:

> A.    . . . I requested blood tests from, I believe, July, August, September, I requested blood tests for those dates and they only had the blood tests for August and September.  And when I seen the August one and the abnormal results and when they say it was supposed to be follow-up that's when I knew they went back to August 8th.  I was in a bad condition[.]

Dkt. No. 41 at 15.

The record before the Court establishes that Sides believed that he was not receiving adequate or timely treatment for his complaints in August 2012.  When Sides arrived at Coxsackie in 2008, he complained of "constant bleeding." Id.  In 2009, he underwent a colonoscopy at Albany Medical and received medication. Id. at 16.  In March or April 2012, Sides began suffering from headaches, nausea, light-headedness, shortness of breath, accelerated heart rate, weakness, and fatigue when he would bleed. Id.  In June or July 2012, these symptoms, along with the bleeding, became "significantly worse" and occurred daily. Id. at 16.  Due to these symptoms, in August 2012 and September 2012, Sides requested sick call, underwent blood tests, met with doctors and specialists, and received medical excuses for programming. Id. at 23.

Although Sides alleges that he was not aware of the results of his blood work, and,

11

thus, did not know of the full extent or severity of his condition until July 2013, the record

before the Court establishes that Sides' claims accrued in August 2012, when he knew he

suffered from a physical condition or injury and believed he was not obtaining adequate

attention for that condition or injury and filed a grievance about such care.  See Curtis v.

Williams, No. 11 CIV. 1186, 2013 WL 1915447, at *8 (S.D.N.Y. May 9, 2013) (rejecting the

plaintiff's argument that his Eighth Amendment claim did not accrue until he received his

MRI results and "was informed of the misdiagnosis and need for reconstructive surgery[.]").

Thus, Sides' action, commenced in October 2015, is untimely, as it needed to have been

brought by August 2015.[9]


## 2. Date of Complaint

Defendants claim that Sides' complaint should be deemed filed "the date that he mailed

his complaint on October 5, 2015, or the date that the complaint was filed, on October 7,

2015." Dkt. No. 40-8 at 9.  Under the "prison mailbox rule," the date of filing is generally

presumed to be the date that an inmate delivers his or her complaint to a prison guard for

mailing.  Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001).  "In the absence of contrary

evidence, district courts in this circuit have tended to assume that prisoners' papers were

given to prison officials on the date of their signing."  Hardy v. Conway, 162 F. App'x 61, 62

(2d Cir. 2006) (summary order) (collecting cases).  The presumption related to mailing may

be refuted with admissible evidence.  See Colon v. Goord, No. 9:98-CV-1302 (FJS/GHL),

2009 WL 890554, at *5 (N.D.N.Y. Mar. 30, 2009) (holding that the presumption was

---

[9]        Sides has not presented any argument, or any evidence in support, of Eighth Amendment
claims related to medical treatment administered or denied prior to August 2012.

sufficiently rebutted by the plaintiff's hearing testimony).

On October 7, 2015, the Court received the following of Sides' submissions: (1) Civil Rights Complaint; (2) Affidavit in Support; (3) Exhibits; (4) a Civil Cover Sheet; and (5) a letter addressed to the "Court Clerk." See Dkt. No. 1. The submissions contain varying dates. The Civil Cover Sheet was executed by Sides and is dated September 21, 2015. Dkt. No. 1-2 at 1. The correspondence to the Clerk, dated September 29, 2015, indicates that Sides "put in" for a notary on September 21, 2015 but, "it was delayed by [the] facility until the 29th."[10] Dkt. No. 1-3 at 1. The envelope for this letter is post-marked October 6, 2017. Id. at 2. The Complaint was signed, but not dated. See Compl.

During his deposition, Sides was presented with a copy of the Complaint and provided the following responses to defense counsel's questions:

> Q.   Taking a look at the eighteenth page, is that your signature in the middle of the page?
> A.   Yes.

---

[10]      In the Court's initial review of the Complaint pursuant to 28. U. S. C. § 1915(e), the Court discussed the timeliness of Sides' claims:

> The Court has considered whether plaintiff's claims are untimely under the applicable statute of limitations. The statute of limitations begins to run on plaintiff's claims when plaintiff knew his rights were violated. See Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980). On initial review, the court is required to screen the complaint and dismiss frivolous claims. Plaintiff claims that he attempted to obtain a notary on September 21, 2015 but that the services were delayed by the facility until September 29, 2015. At this early stage, plaintiff's claims do not appear to be time barred. See Bell v. Maxwell, 1984 F.Supp. 1172, at *3 (S.D.N.Y. 1984) (denying motion to dismiss because the prisoner was not responsible for the delay in securing a notary). This is not a factual finding.

Dkt. No. 6 at 10, n.8. Sides did not present any argument or evidence in support of this alleged delay. Moreover, "[t]he fact that a prisoner does not, by virtue of his confinement, have twenty-four-hour-a-day access to the law library or a notary is not a basis for tolling the statute of limitations." Andolina v. Kenny, No. 09-CV-379, 2010 WL 786302, at *4 (N.D.N.Y. Mar. 3, 2010) (citations omitted).

> Q.    Did you sign this complaint?
> A.    Yes.
> Q.    And did you date it September 29, 2015?
> A.    No, I didn't date it.  That's when I got the notary public,
>       Ms. Jackie Lewis.

Dkt. No. 41 at 9, 32.   Sides testified that he did not mail the Complaint on September 29, 2015.  Dkt. No. 41 at 10.  Sides testified that he began drafting the pleading in August 2015 and "finished" the Complaint in October 2015.  Id.  With respect to the date of mailing, Sides testified:

> Q.    So you didn't mail it at any time in September?
> A.    No.
> Q.    It was definitely October when you mailed it?
> A.    Yes.
> Q.    Do you believe it was October 5th when you mailed it?
> A.    Somewhere around there, early October somewhere.

Dkt. No. 41 at 9-10.

Upon review of the record, the undersigned finds that the general presumption created by the prison mailbox rule is rebutted by admissible evidence, to wit, Sides' own testimony. Although genuine issues of material fact exist pertaining to the date that Sides signed the Complaint, resolution of that question is not necessary.  Based on the record before the Court, and crediting Sides' testimony as to when he delivered the Complaint to prison officials, the undersigned finds that, for the purposes of the statute of limitations, the Complaint was filed on October 5, 2015.  See Samuels v. Schultz, No. 11-CV-6255, 2012 WL 1114095, at *3 (W.D.N.Y. March 30, 2012) ("[. . . .] the Court must credit the pro se plaintiff's factual representation as to when he delivered the Complaint to prison officials."). Thus, Sides' claims are untimely, barring the application of the continuing violation doctrine or equitable tolling, as will be further discussed below.  See Bordas v. Greiner, No. 04 Civ.

14

8904, 2006 WL 2935298, at *3 (S.D.N.Y. Oct. 12, 2006), aff'd, 262 F. App'x 317 (2d Cir. 2008) (summary order) ("[T]he question of when plaintiff delivered his materials to prison officials is no longer a 'genuine issue' for the finder of fact to decide – plaintiff's admissions establish that he 'was unable to file in a timely manner' and that summary judgment is appropriate.").

### 3. Continuing Violation

Defendants argue that Sides cannot benefit from the continuing violation doctrine because "the entirety of his claim accrued on or before September 28, 2012." Dkt. No. 40-8 at 9. The continuing violation doctrine provides that "[w]hen the plaintiff brings a Section 1983 claim challenging a discriminatory policy, commencement of the statute of limitations period may be the[n] delayed until the last discriminatory act in furtherance of the policy." Shomo, 579 F.3d at 181. Courts have applied the doctrine in cases where a prisoner challenges a series of acts culminating in Eighth Amendment violations. Id. at 182. In such instances, the prisoner must allege the existence of an ongoing policy of deliberate indifference to his serious medical needs and some non-time-barred acts taken in furtherance of that policy. Id. The Supreme Court of the United States has made clear that the continuing violation doctrine does not apply to discrete acts but only to ongoing circumstances that combine to form a single violation that cannot be said to have occurred on any particular day. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-15 (2002). "Deliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition, and typically ends only when treatment is provided or the inmate is released." Jervis v. Mitcheff, 258 F. App'x 3,

15

*5-6 (7th Cir. 2007) (summary order) (internal quotation marks omitted).

    In this case, the alleged unconstitutional conduct occurred in August 2012 and continued until September 28, 2012, when Sides was admitted to Albany Medical Center. Dkt. No. 41 at 14; Dkt. No. 43-1 at 4.  Sides claims that between August 8, 2012 and September 28, 2012, defendants ignored his medical history, the results of blood work, and Dr. Conete's recommendations.  See Compl., generally; Dkt. No. 41 at 25-26.  On October 1, 2012, Sides underwent a colonoscopy and on October 4, 2012, Sides underwent a hemorrhoidectomy.  Dkt. No. 41 at 129, 135.  After the surgery, Sides returned to Coxsackie C.F. and was admitted to the infirmary.  Dkt. No. 40-5 at ¶ 20.  Dr. Paolano did not release Sides until he stopped bleeding.  Dkt. No. 41 at 25.  Sides did not experience any medical issues or symptoms related to his hemorrhoids or rectal bleeding after the blood transfusion and surgery in October 2012.  Id.  Sides testified that the surgery resolved his medical problems at the core of this lawsuit.  Id.  Accordingly, as Sides has not presented any evidence establishing that defendants committed acts in furtherance of an "ongoing policy" of deliberate indifference to his serious medical needs within the statutory period – the three years that preceded the commencement of this lawsuit – he has failed to satisfy the continuing violation doctrine.   Shomo, 579 F.3d  at 181.


**4. Equitable Tolling**

    Equitable tolling of the statute of limitations may be applied when the Court determines that a plaintiff should, in fairness, be excused from his or her lateness in filing a complaint. Gonzalez v. Hasty, 651 F.3d 318, 323-24 (2d Cir. 2011).  "Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite

exercising that level of diligence which could reasonably be expected in the circumstances." Id. (quoting Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004)). The plaintiff bears the burden of showing that he or she is entitled to equitable tolling.  See Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007).

   Sides argues that the statute should be tolled because he was not aware of his lab results or the extent of his "significant loss of blood" and "life-threatening anemia," see Dkt. No. 43-2 at 3, until he received his medical records in July 2013.  The undersigned is not persuaded by this argument.  Rather, the undersigned finds that Sides has not established that he pursued his claim diligently.  The evidence before the Court establishes that Sides requested his medical records in October 2012, but waited nearly nine months before filing a grievance complaining that his request was outstanding.  Once Sides realized he was not obtaining the records, he failed to act diligently in order to obtain them.  See generally Padilla v. U.S., No. 02 Civ. 1142, 2002 WL 31571733, at *4 (S.D.N.Y. Nov. 19, 2002) (concluding that the petitioner did not act with "reasonable diligence" because he waited more than five months, after learning that he would not receive legal assistance, to file his petition).  Sides shows no causal connection between the failure to obtain information and the actual late filing, or diligent efforts throughout the period he attempts to toll.  See, e.g., Murphy v. Costello, 10-CV-03909 (JG), 2011 WL 250388, at *5 (E.D.N.Y. Jan. 26, 2011) (noting that equitable tolling could apply where "a petitioner has diligently pursued his claim but has been prevented from filing a petition due to other parties' delay," but noting that "this is not such a  case" as the petitioner "was well aware of the underlying facts that now support his habeas petition.");  Bowman v. U.S. Postal Serv., 02 Civ 6138, 2003 WL 1395821, at *4-5 (S.D.N.Y. Mar. 20, 2003) (rejecting the pro se plaintiff's claim that

17

equitable tolling was warranted where he was unable to obtain certain medical records pertaining to his claim as the missing medical records did not prevent the plaintiff from "discover[ing] the critical facts of both his injury and its cause.") (internal quotation marks and citation omitted).  Moreover, Sides does not explain the three-month gap in time between July 2013, when he received the records, and October 2015, when he filed the complaint.  Based on the foregoing, the undersigned concludes that Sides has failed to meet his burden of showing that he is entitled to equitable tolling.  Accordingly, it is recommended that defendants' motion on this ground be granted.[11]

### III.  Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Dkt. No. 40) be **GRANTED**; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984

---

[11]    Defendants claim that Sides failed to exhaust his administrative remedies as to his claims of deliberate indifference to his serious medical needs because he never filed a grievance related to his medical care.  Dkt. No. 40-8 at 9-12.  Defendants also move for summary judgment on the merits of Sides' claims. Id. at 10-24.  Because the Court recommends dismissal of Sides' claims as time-barred, the Court will not address the alternative arguments.

F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d

15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

Dated: January 5, 2018
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge