UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DARRICK LEE SIDES,

                                        Plaintiff,

        vs.                                                        9:15-CV-1203
                                                                    (MAD/CFH)

DOCTOR PAOLANO, *Doctor; Coxsackie
Medical Unit, individually and officially,* DR.
JON MILLER, *Doctor; Coxsackie Medical
Unit, individually and officially,* P. SNYDER,
*Nurse; Coxsackie Medical Unit, individually
and officially, and* P. SCHMIDT, *Nurse;
Coxsackie Medical Unit, individually and
officially,*

                                        Defendants.
_____

APPEARANCES:                                       OF COUNSEL:

DARRICK LEE SIDES
96-A-5286
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902
Plaintiff, *pro se*

OFFICE OF THE NEW YORK              CHRISTOPHER J. HUMMEL, AAG
STATE ATTORNEY GENERAL
The Capitol
Albany, New York 12224
Attorney for Defendants

Mae A. D'Agostino, U.S. District Judge:

## ORDER

On October 5, 2015,[1] Plaintiff *pro se* Darrick Lee Sides commenced this civil rights

action, pursuant to 42 U.S.C. § 1983, in the Northern District of New York.  *See* Dkt. No. 1.

_____

[1] The Court adopts Magistrate Judge Hummel's finding that under the prison mailbox rule, Plaintiff initiated the action on October 5, 2015.  *See* Dkt. No. 48 at 14.

Plaintiff alleges that Defendants Doctor Paolano, Dr. Jon Miller, Nurse P. Snyder, and Nurse P. Schmidt were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *See id.* Presently before the Court is Magistrate Judge Christian F. Hummel's Report-Recommendation and Order recommending that the Court grant Defendants' motion for summary judgment. *See* Dkt. No. 48. Plaintiff submitted objections to the Report-Recommendation and Order. *See* Dkt. No. 49. For the following reasons, the Report-Recommendation and Order is adopted in its entirety.

Plaintiff's claims arise out of alleged medical indifference at Coxsackie Correctional Facility ("Coxsackie CF"). *See* Dkt. No. 1 at 1.[2] On July 31, 2012, Plaintiff went to the Coxsackie CF infirmary due to hemorrhoids, a medical condition that had afflicted Plaintiff since 2009. *See* Dkt. No. 40-5 at ¶ 8; Dkt. No. 40-6 at ¶ 7. Defendant Paolano ordered blood tests and recommended a surgical consultation after he determined that Plaintiff's symptoms were no longer responding to treatment. *See* Dkt. No. 40-5 at ¶ 8. On August 8, 2012, Defendant Miller reviewed the results of the blood tests and noted to the nursing staff that Plaintiff should be scheduled for an additional evaluation appointment. *See* Dkt. No. 40-6 at ¶ 14.

At some point in August, Plaintiff filed a grievance regarding his condition because he was suffering excessive rectal bleeding and feeling anemic. *See* Dkt. No. 41 at 13. However, Plaintiff did not pursue this grievance after a grievance supervisor told Plaintiff that he was scheduled to see a specialist. *See id.* On August 22, 2012, Plaintiff had a consultation with a non-party doctor who recommended a colonoscopy and an excisional hemorrhoidectomy. *See* Dkt. No. 40-5 at ¶ 12. Defendant Miller received and reviewed this recommendation on August

---

[2] The cited page numbers for docket entries in this Order refer to those assigned by the Court's electronic filing system ("ECF").

28, 2012.  *See* Dkt. No. 40-6 at ¶ 18.  On September 25, 2012, Plaintiff met with Defendant

Paolano who ordered additional blood tests.  *See* Dkt. No. 40-5 at ¶ 16.

On September 28, 2012, Defendant Miller sent Plaintiff to Albany Medical Center

("AMC") for further treatment after reviewing the second round of blood tests.  *See* Dkt. No. 40-6

at ¶ 24.  Upon arrival at AMC, Plaintiff was given a blood transfusion and a colonoscopy.  *See id.*

at ¶ 25.  The colonoscopy revealed that Plaintiff had stage III hemorrhoids.  *See id.*  On October

4, 2012, Plaintiff underwent a hemorroidectomy.  *See id.*  October 6, 2012, Plaintiff was

discharged from AMC and returned to Coxsackie CF.  *See id.*  On October 9, 2012, Plaintiff was

discharged from the Coxsackie CF infirmary.  *See* Dkt. No. 40-5 at ¶ 20.

In October 2012, Plaintiff requested a copy of his medical records.  *See* Dkt. No. 41 at 15.

In July 2013, Plaintiff initiated a grievance because he had still not received them.  *See* Dkt. No.

40-3 at 8.  On July 25, 2013, the Inmate Grievance Resolution Committee accepted Plaintiff's

grievance and made Plaintiff's medical records available to him.  *See id.* at 9.

On March 1, 2017, Defendants filed a motion for summary judgment.  *See* Dkt. No. 40.  In

their motion, Defendants argue that Plaintiff's claims should be dismissed for the following

reasons: (1) Plaintiff failed to file his complaint within the applicable statute of limitations; (2)

Plaintiff failed to exhaust his administrative remedies; (3) Defendants were not deliberately

indifferent to Plaintiff's medical needs; and (4) Defendants are entitled to qualified immunity.  *See*

Dkt. No. 40-8 at 2.  On April 5, 2017, Plaintiff filed a response in opposition to Defendants'

motion.  *See* Dkt. No. 43.  With respect to the statute of limitations, Plaintiff argues that his claim

is timely because he did not discover that his medical treatment had been delayed until July 2013.

*See* Dkt. No. 43-1 at 12-13.  Magistrate Judge Hummel interpreted Plaintiff's argument as a

challenge to the accrual date and a claim for equitable tolling.  *See* Dkt. No. 48 at 9.

On January 8, 2018, Magistrate Judge Hummel issued a Report-Recommendation and Order recommending that this Court dismiss Plaintiff's claims as time-barred. *See id.* at 18. Magistrate Judge Hummel determined that Plaintiff's claim accrued when he knew, or had reason to know, of his injury. *See id.* at 9 (quoting *Whitfield v. O'Connell*, No. 09 Civ. 1925, 2010 WL 1010060, \*5 (S.D.N.Y. Mar. 18, 2010), *aff'd*, 402 Fed. Appx. 563 (2d Cir. 2010)). The Report-Recommendation and Order explained that "[d]elay in discovering the cause of the injury does not prevent the claim from accruing because it is discovery of the injury, not discovery of the other elements of the claim, [that] starts the clock." *Id.* (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)). Thus, Plaintiff became aware of the violation in "August 2012, when he knew he suffered from a physical condition or injury and believed he was not obtaining adequate attention for that condition or injury and filed a grievance about such care." *Id.* at 12 (citing *Curtis v. Williams*, No. 11 Civ. 1186, 2013 WL 1915447, \*8 (S.D.N.Y. May 9, 2013)). However, under the continuing violations doctrine, a medical indifference claim does not accrue until an inmate begins to receive proper medical treatment. *See id.* at 15 (citing *Jervis v. Mitcheff*, 258 Fed. Appx. 3, 5-6 (7th Cir. 2007)). As Plaintiff's treatment did not begin until he was admitted to AMC, Magistrate Judge Hummel found that the effective accrual date was September 28, 2012. *See id.* at 16.

Magistrate Judge Hummel rejected Plaintiff's equitable tolling argument. *See id.* at 16-18. He noted that even though Plaintiff requested to see his medical records in October 2012 and did not receive them until July 2013, "[o]nce [Plaintiff] realized he was not obtaining the records, he failed to act diligently." *Id.* at 17. As such, Plaintiff failed to demonstrate the necessary diligence required for equitable tolling. *See id.* at 18. Given that Plaintiff filed his complaint on October 5, 2015, the three year statute of limitations for a 42 U.S.C. § 1983 claim expired on September 28,

2015, and Plaintiff was not entitled to equitable tolling, Magistrate Judge Hummel recommended

that the Court find Plaintiff's claims time barred and grant Defendants' motion for summary

judgment.  *See id.*

A court may grant a motion for summary judgment only if "the court determines that there

is no genuine issue of material fact to be tried and that the facts as to which there is no such issue

warrant judgment for the moving party as a matter of law."  *Chambers v. TRM Copy Ctrs. Corp.*,

43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion,

the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'"

*Id.* at 36-37 (quotation and other citation omitted).

In assessing the record to determine whether any such issues of material fact exist, the

court is required to resolve all ambiguities and draw all reasonable factual inferences in favor of

the nonmoving party.  *See id.* at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255,

106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted).  Where the non-

movant either does not respond to the motion or fails to dispute the movant's statement of material

facts, the court may not rely solely on the moving party's statement of material facts; rather, the

court must be satisfied that the citations to evidence in the record support the movant's assertions.

*See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003).

Moreover, "in a *pro se* case, the court must view the submissions by a more lenient

standard than that accorded to 'formal pleadings drafted by lawyers.'"  *Govan v. Campbell*, 289 F.

Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594,

30 L. Ed. 2d 652 (1972)) (other citations omitted).  "Indeed, the Second Circuit has stated that

'[i]mplicit in the right to self-representation is an obligation on the part of the court to make

reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights

because of their lack of legal training.'" *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  "This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment."  *Id.* (citing *Showers v. Eastmond*, No. 00 CIV. 3725, 2001 WL 527484, at \*1 (S.D.N.Y. May 16, 2001)).

When a party files specific objections to a magistrate judge's report-recommendation and order, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error.  *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted).  After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

On January 29, 2018, Plaintiff filed objections to Magistrate Judge Hummel's Report-Recommendation and Order.  *See* Dkt. No. 49.  Plaintiff's specific objections to the Report-Recommendation and Order fall into three broad categories: (1) objecting to the legal standard used to determine the accrual date; (2) contesting Magistrate Judge Hummel's factual basis for determining the end date of the medical indifference; and (3) objecting to Magistrate Judge Hummel's conclusion that Plaintiff was not diligent in pursuing his claims.  *See id.* at 6-8, 16.

Plaintiff argues that claims accrue after the "last treatment where there is continuous treatment for the same illness or condition."  Dkt. No. 49 at 8.  However, as Magistrate Judge Hummel correctly noted, "[d]eliberate indifference to a serious medical need is a continuing violation that accrues when the defendant has notice of the untreated condition, and typically ends

6

only when treatment is provided or the inmate is released." *Jervis*, 258 Fed. Appx. at 5-6; *see also Heard v. Sheahan*, 253 F.3d 316, 319-20 (7th Cir. 2001) (holding a medical indifference claim does not accrue until the violation is complete), *cited with approval in Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009).

Similarly, Plaintiff presents a time line of his treatment in the hopes of extending the violation past October 5, 2012, under the continuing violation doctrine. *See* Dkt. No. 49 at 6-7. However, this time line does not show any evidence of medical indifference occurring after he was provided treatment on September 28, 2012. As such, Magistrate Judge Hummel correctly determined that the actual accrual date was September 28, 2012.

Finally, Plaintiff argues that Magistrate Judge Hummel erred in denying equitable tolling. *See* Dkt. No. 49 at 16. Plaintiff notes that reasonable diligence does not require an exhaustion of administrative remedies and that he repeatedly requested access to his records. *See id.* A plaintiff bears the burden of demonstrating that he is entitled to equitable tolling. *See Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007). To receive this extraordinary remedy, the plaintiff must show that he "acted with reasonable diligence throughout the period he [seeks] to toll." *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005) (quotation omitted). Contrary to Plaintiff's assertions, Magistrate Judge Hummel did not base his conclusion on the fact that Plaintiff failed to exhaust his administrative remedies. Instead, Magistrate Judge Hummel concluded that Plaintiff's inaction during this period demonstrated that Plaintiff was not exercising reasonable diligence. Although Plaintiff asserts in his objections that he repeatedly requested access to the medical records, these requests are immaterial. Plaintiff had been aware of the necessary facts for his complaint since he filed his grievance in August 2012. While the medical records may have been useful to support the merits of his claim, they were not essential to initiate an administrative

grievance or file a federal claim pursuant to 42 U.S.C. § 1983.  *See Murphy v. Costello*, No. 10-CV-03909, 2011 WL 250388, \*5 (E.D.N.Y. Jan. 26, 2011) (denying equitable tolling where "[t]he information [the plaintiff] sought from the state . . . may have been useful . . . but [was] not necessary to [the plaintiff's] assertions").  As Plaintiff made no efforts to advance his claim during this period, Magistrate Judge Hummel correctly determined that Plaintiff was not reasonably diligent and, thus, not entitled to equitable tolling.

Having reviewed Magistrate Judge Hummel's January 8, 2018, Report-Recommendation and Order, Plaintiff's objections, the record, and the applicable law, the Court concludes that Magistrate Judge Hummel correctly recommended that the Court should grant Defendants' motion for summary judgment and enter judgment in Defendants' favor.

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order (Dkt. No. 48) is **ADOPTED** in its entirety for the reasons stated therein; and the Court further

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 40) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 29, 2018
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

8